**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Roderick DOUGLAS, Defendant–**
**Appellant.**

No. 02–2946.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 18, 2002.

Decided Jan. 29, 2003.

Before EASTERBROOK, MANION, and EVANS, Circuit Judges.

ORDER

Roderick Douglas pleaded guilty to possession of cocaine with intent to distribute, *see* 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii), and was sentenced to 146 months' incarceration and five years' supervised release. Douglas's guilty plea, however, was conditional, allowing him to appeal the district court's denial of his motion to suppress evidence. On appeal he argues that the police lacked probable cause to conduct a warrantless search of his car. We affirm.

In September 2001 agents of the United States Drug Enforcement Agency enlisted "D.J." to act as a confidential informant after he had been caught selling illegal narcotics. From September through November, D.J., who has a criminal record and a history of drug use, participated in several controlled drug purchases. During this time, he also provided information about various investigative targets, and his assistance led to several money seizures. One of D.J's controlled buys led to the December 2001 indictment of a drug dealer.

In October D.J. told DEA agents that Douglas had sold large quantities of cocaine in the Madison area. According to D.J., Douglas would frequently drive to Chicago to pick up illegal narcotics, then return to Madison to deal. D.J. said that he had purchased multiple kilograms of narcotics from Douglas over the past year. Upon learning this information, agents set up a controlled buy in which D.J. purchased from Douglas three ounces of crack cocaine at Douglas's residence.

On November 24, D.J. advised agent Craig Grywalski that Douglas had told him that he would be returning from Chicago

that day with approximately one kilogram of cocaine. According to D.J., Douglas was planning to drive a black Expedition or Explorer along Interstate 90 from Chicago toward Madison that afternoon. After performing a records check, agents learned that Douglas's mother had a black Ford Expedition registered in her name.

Grywalski immediately contacted and briefed the Rock County Sheriff's Department, which placed an unmarked squad patrol car along Interstate 90. DEA agents located and tracked the SUV, and then relayed to the two awaiting deputy officers a description of the vehicle and its license plate number. After the SUV passed by, the deputies paced it, determined that it was exceeding the speed limit, and pulled it over.

When confronted by the deputies, Douglas did not have identification or a driver's license. He identified himself as "Frederick Douglas," his twin brother. The deputies then conducted a records check; "Frederick Douglas" did not have any outstanding warrants, but "Roderick Douglas" did. The deputies concluded that the driver was Roderick Douglas and arrested him on the outstanding warrants. They then searched the car and found one kilogram of cocaine under the back seat.

Douglas moved to suppress the evidence seized in the car on the ground that the warrantless search was not supported by probable cause. After Grywalski and the two patrol deputies testified at an evidentiary hearing, a magistrate judge concluded that the search was supported by probable cause and recommended denying the

motion. Douglas filed objections, but the district court adopted the magistrate judge's recommendation. *See* 28 U.S.C. § 636(b)(1)(B).

On appeal Douglas argues that the warrantless inspection of his car violated his Fourth Amendment rights.[1] Under the "automobile exception" to the Fourth Amendment's warrant requirement, police officers may stop and search cars without a warrant when they have probable cause to believe that the vehicle contains contraband or evidence of a crime. *Alabama v. White,* 496 U.S. 325, 332, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Probable cause exists where the known facts and circumstances are sufficient to warrant a reasonably prudent person in believing that contraband or evidence of a crime will be found. *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). A finding of probable cause is based on probabilities, and need not rise to the level of certainty. *Illinois v. Gates,* 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

The district court properly concluded that there was probable cause to search the car. In *Gates* the Supreme Court held that a highly detailed tip from an anonymous informant that is corroborated by independent police work is sufficient to establish probable cause. *See id.* at 246, 103 S.Ct. 2317; *see also United States v. McClinton,* 135 F.3d 1178, 1183 (7th Cir. 1998). In the present case, the informant was not only known to law enforcement, enhancing the information's reliability, *see Florida v. J.L.,* 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), but he also

---

1. The government focuses on whether D.J.'s tip established probable cause. The magistrate judge rejected (and the government abandons on appeal) a simpler justification for the search of Douglas's car. He was speeding, which authorized the stop even though it was pretextual. And he had an

outstanding warrant for which they arrested him. This custodial arrest permitted a search of the passenger compartment incident to the arrest. *See New York v. Belton,* 453 U.S. 454, 460, 460–61 n. 4, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

had a proven track record of providing reliable information, including information leading to several controlled purchases (one, a successful buy from Douglas himself) and money seizures. *See United States v. Rucker,* 138 F.3d 697, 700 (7th Cir.1998) (informant's past record of providing reliable information is relevant in establishing reliability of present information). Moreover, D.J's tip contained specific details about Douglas's future actions that were not easily predicted–he correctly earmarked the time and route of Douglas's return. *See McClinton,* 135 F.3d at 1184. And the detailed information he provided about Douglas's trip was independently corroborated by the surveilling agents and the deputies. *See United States v. Navarro,* 90 F.3d 1245, 1252 (7th Cir.1996).

Douglas argues that D.J. lacked credibility because he was a known drug dealer and user with a criminal record. In evaluating an informant's credibility, this court considers (1) the informant's personal knowledge, (2) the degree of detail the informant provides, (3) independent police corroboration, and (4) testimony by the informant at the probable cause hearing. *United States v. Jones,* 208 F.3d 603, 609 (7th Cir.2000). Here, all that was missing was D.J.'s testimony. He was intimately familiar with Douglas's operation, having bought drugs from him on several occasions; his tip was highly detailed, accurately predicting the "where" and "when" of Douglas's return; and law enforcement agents were able to verify his account at every step. D.J. was reliable and the warrantless search was supported by probable cause.

AFFIRMED.