UNITED STATES, Appellee

v.

James A. Cowgill, Staff Sergeant
U.S. Air Force, Appellant

No. 09-0376

Crim. App. No. S31404

United States Court of Appeals for the Armed Forces

Argued November 4, 2009

Decided March 5, 2010

BAKER, J., delivered the judgment of the Court, in which RYAN, J., joined.  STUCKY, J., filed a separate opinion concurring in the result.  ERDMANN, J., filed a separate opinion concurring in part and dissenting in part, in which EFFRON, C.J., joined.

Counsel

For Appellant:  Captain Michael S. Kerr (argued); Captain Tiffany M. Wagner and Major Shannon A. Bennett (on brief).

For Appellee:  Lieutenant Colonel Jeremy S. Weber (argued); Colonel Douglas P. Cordova and Gerald R. Bruce, Esq. (on brief).


Military Judge:  Nancy J. Paul

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Cowgill, No. 09-0376/AF

Judge BAKER delivered the judgment of the Court.[1]

A special court-martial composed of a military judge alone convicted Appellant, pursuant to his conditional pleas, of two specifications of wrongful use of controlled substances and one specification of possession of marijuana, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000). Appellant was sentenced to a bad-conduct discharge, confinement for two months, and reduction to the grade of E-1. The convening authority approved the findings and sentence, and the United States Air Force Court of Criminal Appeals affirmed. United States v. Cowgill, No. ACM S31404 (A.F. Ct. Crim. App. Dec. 10, 2008). We granted review on the following assigned issue:

> WHETHER THE MILITARY JUDGE ABUSED HER DISCRETION IN DENYING THE DEFENSE MOTION TO SUPPRESS ALL EVIDENCE FROM APPELLANT'S HOME.

Whether the military judge abused her discretion depends on whether there was a substantial basis for the civilian magistrate to find probable cause. The answer hinges on two questions about which this Court is twice divided. First, did Detective (Det.) Gary Krause provide erroneous information contained within the search warrant affidavit in reckless

---

[1] We heard oral argument in this case at Fort Campbell, Kentucky, as part of the Court's "Project Outreach." This practice was developed as a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

2

disregard for the truth?  Second, if so, was there nonetheless
sufficient independent information contained within the
affidavit to provide a substantial basis to find probable cause?
For the reasons set forth below, a majority of this Court
concludes that there was a substantial basis to find probable
cause.  Therefore, the military judge did not abuse her
discretion, the evidence was properly admitted and the case is
affirmed.

## BACKGROUND

On January 5, 2007, Air Force Office of Special
Investigations (OSI) Special Agent (SA) Adrianna Vorderbruggen
contacted Det. Gary Krause, a member of the Tacoma Police
Department, for assistance in obtaining a search warrant.  SA
Vorderbruggen told Det. Krause that an unnamed source had
witnessed Appellant smoking marijuana three times during
December 2006 and smelled marijuana in Appellant's off-base home
on various occasions during 2006.  Additionally, she said that
Appellant's roommate tested positive on a urinalysis test.  The
two investigators talked for approximately fifteen to twenty
minutes and had no follow-up conversations.  Det. Krause then
verified the address and description of the house provided by
the source.

That same day, Det. Krause prepared an affidavit, including
this information, and presented it to a civilian magistrate to

obtain a search warrant for drugs at Appellant's off-base residence. Det. Krause did not contact OSI to review the content of the affidavit. Among other things, the affidavit Det. Krause originally submitted to the magistrate stated:

> The last time the source smelled marijuana was on the 28th of December. The source smelled marijuana on other occasions spread out over the course of 2006. In accordance with Air Force guidelines, OSI obtained a urinalysis from one of the two named subjects which came back positive for the presence of marijuana.

When the magistrate asked for corroboration for the unnamed source's statements, Det. Krause told him that the urinalysis test was done as a result of the source's information. He did not verify this information with OSI. Det. Krause amended the affidavit by hand to read: "Based upon the source's information + In [sic] accordance with Air Force guidelines, OSI obtained a urinalysis from one of the two named subjects which came back positive for the presence of marijuana."

These statements were factually incorrect, but believed to be true by the detective at the time. The urinalysis test was actually conducted pursuant to a unit sweep in August 2006. Additionally, Det. Krause told the magistrate that it was unusual that the source was reporting through OSI and that he had no direct contact with the source. Det. Krause received and executed the warrant, finding approximately three grams of marijuana when searching Appellant's home. Appellant moved to

4

suppress the evidence, and, after losing the motion, he entered

a conditional guilty plea for possession.

The military judge subsequently found that the magistrate:

> issued a warrant for the Accused's residence based, in
> part, on erroneous information. . . . [A] crucial
> factor in his decision to issue the warrant was that a
> urinalysis had been conducted with positive results
> for the marijuana metabolite based on information from
> this source.  In addition, he was also told that the
> OSI was requesting the warrant based, in part, on the
> positive urinalysis result.  It appears that this
> false information was important to the [sic] Judge
> Chushcoff in determining whether probable cause
> existed.  If not provided this incorrect information,
> a finding may possibly have been that probable cause
> did not exist.

However, the military judge concluded there was no evidence that

the detective "made these statements with reckless disregard for

the truth."  Finally, the military judge concluded that "Despite

the erroneous information mistakenly provided to the Judge,

there still remained a substantial basis for determining the

existence of probable cause."

## ANALYSIS

The Fourth Amendment requires that "no Warrants shall

issue, but upon probable cause."  U.S. Const. amend. IV.  A

military judge's decision to find probable cause existed to

support a search authorization as well as to admit or exclude

evidence is reviewed for an abuse of discretion.  United States

v. Bethea, 61 M.J. 184, 187 (C.A.A.F. 2005); United States v.

Carter, 54 M.J. 414, 418 (C.A.A.F. 2001).  "An abuse of

5

discretion occurs if the military judge's findings of fact are clearly erroneous or if the decision is influenced by an erroneous view of the law." United States v. Quintanilla, 63 M.J. 29, 35 (C.A.A.F. 2006). "In reviewing a ruling on a motion to suppress, we consider the evidence in the light most favorable to the prevailing party." United States v. Reister, 44 M.J. 409, 413 (C.A.A.F. 1996) (quotation marks omitted).

The military judge would not have abused her discretion when denying the motion to suppress if the magistrate had a "substantial basis" for determining that probable cause existed. United States v. Leedy, 65 M.J. 208, 213 (C.A.A.F. 2007) (citing Illinois v. Gates, 462 U.S. 213, 236 (1983)). Probable cause exists when there is sufficient information to provide the authorizing official "a reasonable belief that the person, property, or evidence sought is located in the place or on the person to be searched." Military Rule of Evidence (M.R.E.) 315(f)(2).

Appellant argues that absent the false information regarding the timing and predicate of the roommate's urinalysis, the affidavit depended on the uncorroborated information of an unnamed source. Appellant acknowledges that Gates replaced the "veracity-knowledge" test from Aguilar v. Texas, 378 U.S. 108, 113-14 (1964), and Spinelli v. United States, 393 U.S. 410, 415-16 (1969), with a more contextual "totality of the

6

circumstances" approach.  See Gates, 462 U.S. at 230.  However,

Appellant correctly argues that Gates did not replace the need

for the Government to show some concrete indicia of reliability

before reliance is placed on a confidential informant.  Absent

such indicia, the affidavit was "facially deficient" and the

conclusion regarding the source's "reliability" conclusory.

The Government acknowledges that certain information

provided by Det. Krause was erroneous.  However, the Government

argues that the confidential informant's information was

otherwise corroborated by the roommate's urinalysis results, if

not the date of and predicate for the test, and was otherwise

relevant to a probable cause finding.  In addition, while

acknowledging that the Gates totality of the circumstances test

still requires indicia that an informant is reliable, the

Government finds that reliability in the granular and specific

nature of the informant's input.

## I.  Treatment of the Erroneous Information

As a threshold question, and in light of the erroneous

information contained within the affidavit, this Court must

determine what information should be reviewed to determine

whether or not a substantial basis for finding probable cause

was present.  In reviewing probable cause determinations, this

Court examines the information known to the magistrate at the

time of his decision, and the manner in which the facts became

known.  Bethea, 61 M.J. at 187; Leedy, 65 M.J. at 214.  However, in Gallo, this Court stated that "when there are misstatements or improperly obtained information, we sever those from the affidavit and examine the remainder to determine if probable cause still exists."  United States v. Gallo, 55 M.J. 418, 421 (C.A.A.F. 2001); see also United States v. Mason, 59 M.J. 416, 422 (C.A.A.F. 2004).

Gallo ultimately derives from Franks v. Delaware, in which the U.S. Supreme Court stated:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.  In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. 154, 155-56 (1978).  Franks focused on whether the veracity of a warrant affidavit can be challenged by the defendant to quash the admission of seized evidence at trial.  Id. at 155.  In that context, the Supreme Court expressed the view that the best way to balance the need to protect the

8

probable cause requirement with society's interest in discovering the truth was to delimit the circumstances where affidavits might be challenged.  Id. at 165-71.  One explicit limitation was to allow review only in cases where there is evidence of deliberate misstatements or reckless disregard for the truth.  "Allegations of negligence or innocent mistake are insufficient."  Id. at 171.  This rule and procedure was then adopted in M.R.E. 311(g)(2), which states that at a hearing reviewing whether probable cause existed for a search warrant "the defense has the burden of establishing by a preponderance of the evidence the allegation of knowing and intentional falsity or reckless disregard for the truth."  M.R.E. 311(g)(2).

The operative language of Franks varies in nuance from that of Gallo.  While Gallo addresses "misstatements" or "improperly obtained information," Franks focuses on "misstatements" made knowingly or "reckless disregard for the truth."  However, the underlying corrective principle is the same.  "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required."  Franks, 438 U.S. at 171-72.  Moreover, to the extent there is a distinction between Gallo and Franks in what triggers the corrective principle, it is not essential

9

here, for in the judgment of a majority of the Court, the affidavit was provided with reckless disregard for the truth.

Det. Krause's affidavit states, "Based upon the source's information [and i]n accordance with Air Force guidelines, OSI obtained a urinalysis from one of the two named subjects which came back positive for the presence of marijuana."  Both parties agree that the reason for and the implicit time period of the urinalysis test was incorrectly stated to the magistrate.  The military judge found that the "erroneous information [was] mistakenly provided to the Judge."  She further found that the magistrate judge relied on these statements.

The military judge found no evidence that the factual errors were intentional.  In fairness to the participants, it is also clear from the record that the detective and the OSI investigators could not recall the precise detail of their oral communication.  Nonetheless, in our view it was reckless in the context of this case for the local detective not to validate the affidavit and its contents with the OSI before submitting it to the magistrate.

Some courts have stated that a reckless disregard for the truth occurs when the affiant "had obvious reasons to doubt the veracity of the allegations."  E.g., United States v. Jones, 208 F.3d 603, 607 (7th Cir. 2000) (quotation marks and citations omitted).  Other courts have adopted similar definitions as well

as additional definitions to address different contexts. Thus, the United States Court of Appeals for the Third Circuit has adopted the language of the United States Court of Appeals for the Eighth Circuit in concluding that "omissions are made with reckless disregard if an officer withholds a fact in his ken that 'any reasonable person would have known that this was the kind of thing the judge would wish to know.'" Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000) (quoting United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir. 1993)). Generally, regardless of specific definitions, reckless disregard requires something more than negligence. However, the distinction between mere negligence and reckless disregard can be opaque in this area of the law, requiring judges to discern the difference between that which is flagrant versus that which merely breaches a duty of care. The task is made no easier by the equally opaque manner in which courts have distinguished between intentional misstatements and a reckless disregard for the truth based on "serious doubts as to the truth." Jones, 208 F.3d at 607.

The circumstances of this case do not fit neatly into an existing case law rubric involving either omissions or assertions. The detective did not withhold knowledge about the roommate's urinalysis nor is there reason to believe he had serious doubts about what he said about the urinalysis. Indeed,

11

the record reflects that he acted in good faith.  The concern in this case is procedural.  The question is whether the detective was merely negligent or reckless in not doing more to confirm the affidavit facts in this specific context.

To start, as noted by the detective himself, it was unusual and out of the ordinary for an affiant to rely on a confidential informant without first having direct contact with that source.  Nor did the detective have information regarding the nature of the source, including his military status.  In addition, the detective told the magistrate that this informant was different than the ones he normally brought to court who typically would have been vetted using reliability buys.  Thus on guard, the detective would have been better served to review the affidavit with the OSI before submitting it to the magistrate.  However, when the magistrate specifically asked the detective about corroboration and the "hot urinalysis" it was imperative that the detective get the facts right.  This was not only "the kind of thing the judge would wish to know"; he specifically wanted to know.  At this point, if not before, it was reckless not to validate the facts with the OSI.  Moreover, the record reveals no urgency or exigent circumstance that precluded the detective from doing so.  Det. Krause's lack of information about both the informant and the urinalysis test created obvious reasons for

him to doubt the assertions he made in court, and demonstrate a reckless disregard for the warrant process.

Our determination that the information in question was provided recklessly is a fact-specific holding.  In our view, the unusual circumstances surrounding the informant, the magistrate's specific question about the predicate for the roommate's urinalysis, and the obvious importance of the answer to the magistrate's probable cause determination, moved this case from the negligent to the reckless.  Having concluded that the information in question was provided in reckless disregard, consistent with Gallo and Franks we will sever that information from the affidavit and determine whether sufficient information remained in order for the magistrate to find probable cause.

II.  Was There Nonetheless a Substantial Basis to Find Probable Cause?

Probable cause relies on a "common-sense decision whether, given all the circumstances . . . there is a fair probability that contraband" will be found.  Leedy, 65 M.J. at 213 (quote marks omitted) (quoting Gates, 462 U.S. at 236).

> The threshold for probable cause is subject to evolving case-law adjustments, but at its core it requires factual demonstration or reason to believe that a crime has or will be committed.  As the term implies, probable cause deals with probabilities.  It is not a "technical" standard, but rather is based on "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."  Probable cause requires more than bare suspicion, but something less than a

> preponderance of the evidence. . . . The duty of the
> reviewing court is simply to make a practical, common-
> sense decision whether, given all the circumstances
> set forth in the affidavit . . . there is a fair
> probability that contraband or evidence of a crime
> will be found in a particular place.

Leedy, 65 M.J. at 213 (final ellipsis in original) (citations omitted).

On the one hand, Appellant argues that absent the erroneous information no probable cause existed because there was insufficient corroboration for "an unknown, unproven informant . . . to justify searching someone's home" and upholding the warrant will ratify inappropriate police reliance on such an informant. United States v. Wilhelm, 80 F.3d 116, 120 (4th Cir. 1996). The magistrate in this case asked Det. Krause about the reliability of the informant and whether there was any corroborating evidence, demonstrating that the credibility of the informant was central to the probable cause determination by the magistrate. Appellant argues that if the informant was not reliable, then most of the information in the affidavit should be given no weight. Additionally, the Appellant contends that because some of the urinalysis information is false, one cannot rely on it at all in this case. As a result, Appellant contends all that is left is a bare-bones affidavit.

On the other hand, Det. Krause's affidavit included: statements about his conversation with SA Vorderbruggen,

including his understanding that the source was "reliable"; a description of the statements from the unnamed source; and verification of Appellant's address along with confirmation of the description of Appellant's home as provided by the source.[2] The source described witnessing Appellant along with his roommate smoke marijuana, the drug paraphernalia they used to do so, and the persistent smell of drugs in Appellant's home. Additionally, Appellant's roommate failed a drug test during the time that the source asserted the drug use was occurring.

Based on this information we agree with the military judge's statement that the affidavit "could undoubtedly have been more detailed, with additional information about the reliable source and information unquestionably should have been confirmed between the OSI and Det Kraus [sic]." At the same time, based on the totality of the circumstances, we conclude that the military judge did not abuse her discretion in admitting the evidence seized from Appellant's home.[3] While the drug test was not recent, it was not stale for the purposes of corroborating the informant's statement with respect to the generalized use of marijuana over a six-month period. In

---

[2] The affidavit also included reference to eight noise complaints filed against Appellant's address.

[3] In light of this conclusion we need not and do not address the applicability of the good faith exception, as discussed in Judge Erdmann's separate opinion.

addition, the detective's verification of Appellant's address confirmed the source's description of the home and the source's incriminating statements were specific as to time and granular as to deed.

CONCLUSION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Cowgill, No. 09-0376/AF

STUCKY, Judge (concurring in the result):

I concur with Judge Baker that, even without considering the contested statements, the magistrate had a substantial basis upon which to find probable cause to search Appellant's off-base residence.  However, I disagree with the holding that the information was provided "recklessly."  United States v. Cowgill, __ M.J. __ (13) (C.A.A.F. 2010).

When an accused alleges that a government agent provided false information to an official authorizing a search, "the defense has the burden of establishing by a preponderance of the evidence the allegation of knowing and intentional falsity or reckless disregard for the truth."  Military Rule of Evidence (M.R.E.) 311(g); see Franks v. Delaware, 438 U.S. 154, 156 (1978).  "Allegations of negligence or innocent mistake are insufficient."  Franks, 438 U.S. at 171.

The military judge found that "there was no evidence presented that Det. Krause deliberately lied to Judge Chushcoff when he told him about the urinalysis results or the reasons for the search.  Nor was evidence presented that Det. Krause made these statements with reckless disregard for the truth."  Whether an accused established by a preponderance of the evidence that the affidavit was deliberately false or made with reckless disregard for the truth are questions of fact for the military judge to resolve; thus, a military judge's findings on

this issue "are binding unless they are clearly erroneous." United States v. Allen, 53 M.J. 402, 408 (C.A.A.F. 2000).

To prove reckless disregard for the truth under Franks, the accused "must prove that the affiant 'in fact entertained serious doubts as to the truth' of the allegations." United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 2002) (quoting United States v. Williams, 737 F.2d 594, 602 (7th Cir.1984)) (agreeing with United States v. Davis, 617 F.2d 677, 694 (D.C. Cir. 1979) (holding that the First Amendment definition should be applied by analogy in the Franks setting)). There is no evidence that Det. Krause "entertained serious doubts as to the truth" of the matters he submitted in his affidavit. Instead, the evidence supports a conclusion that Det. Krause made an innocent mistake in advising the magistrate that the source's information had resulted in the Air Force Office of Special Investigations obtaining a urinalysis from one of the subjects of the investigation that subsequently tested positive for marijuana.

Under these circumstances, I would hold that the military judge was not clearly erroneous in finding there was no evidence that Det. Krause's affidavit was made with reckless disregard for the truth.

I concur in the result.

2

United States v. Cowgill, No. 09-0376/AF

ERDMANN, Judge, with whom EFFRON, Chief Judge, joins (concurring in part and dissenting in part):

I agree with the majority's analysis and conclusion that the false information in the affidavit was provided with reckless disregard for the truth. I also agree with the majority's treatment of the difference in language between Franks v. Delaware, 438 U.S. 154 (1978), and United States v. Gallo, 55 M.J. 418 (C.A.A.F. 2001), as to the proper appellate analysis of a search warrant affidavit that has been found to contain false information. I respectfully disagree, however, with the majority's conclusion that after removing the false information from the affidavit there remained a substantial basis to find probable cause. I would further find that the "good faith" exception does not apply under these circumstances and would reverse the United States Air Force Court of Criminal Appeals and set aside Specification 2 of the Charge.

In Illinois v. Gates, 462 U.S. 213 (1983), the Supreme Court returned to a "totality-of-the-circumstances" analysis for reviewing probable cause determinations:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the

> magistrate had a "substantial basis for . . .
> [concluding]" that probable cause existed.

Gates, 462 U.S. at 238-39 (alterations in original)

(quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

Where an affidavit has been found to contain false

information, once that information has been removed, this court:

> broadly bifurcates the review of a magistrate's
> determination into two "closely intertwined" analyses:
> first, we examine the facts known to the magistrate at
> the time of his decision, and second, we analyze the
> manner in which the facts became known to the
> magistrate.  Thus, while the initial inquiry rightly
> centers on the evidence as set out in the four corners
> of the requesting affidavit, this evidence "may [then
> be] usefully illuminat[ed]" by factors such as the
> "veracity," "reliability" and "basis of knowledge" of
> the individual presenting the evidence.

United States v. Leedy, 65 M.J. 208, 214 (C.A.A.F. 2007)

(alterations in original) (citations omitted).

The United States Court of Appeals for the Tenth Circuit

recently provided a useful discussion of these concepts in

United States v. Quezada-Enriquez, 567 F.3d 1228 (10th Cir.

2009), cert. denied 130 S. Ct. 427 (2009):

> Veracity concerns whether there is reason to believe
> that the informant is telling the truth, see [Gates]
> at 227; United States v. Tuter, 240 F.3d 1292, 1297
> (10th Cir. 2001), including whether he faces criminal
> charges or whether his statement is against his own
> penal interest.  "[W]hen there is sufficient
> independent corroboration of an informant's
> information, there is no need to establish the
> veracity of the informant." United States v. Artez,
> 389 F.3d 1106, 1111 (10th Cir. 2004).  Reliability
> determinations entail inquiry into whether the
> informant has provided accurate information in the

> past. United States v. Corral, 970 F.2d 719, 727
> (10th Cir. 1992); see also Gates, 462 U.S. at 243-44.
> As for basis of knowledge, a firsthand observation is
> entitled to greater weight than secondhand
> information. Tuter, 240 F.3d 1297-98. Thus, when the
> informant's basis of knowledge is not described on the
> face of the affidavit, we look to whether the
> information "contained a range of details relating not
> just to easily obtained facts and conditions existing
> at the time of the tip, but to future actions of third
> parties ordinarily not easily predicted." Gates, 462
> U.S. at 245. We look for "the kind of highly specific
> or personal details from which one could reasonably
> infer that the [informant] had firsthand knowledge
> about the claimed criminal activity." Tuter, 240 F.3d
> at 1298; see also Florida v. J.L., 529 U.S. 266, 271
> (2000) (explaining that the provision of accurate
> "predictive information" can indicate either veracity
> or basis of knowledge).

567 F.3d at 1233 (second and third alterations in

original).

The facts included in the affidavit that were attributed to

the informant included: an allegation of use of marijuana in

the residence by the tenants; the use involved less than forty

grams of marijuana and also involved a glass "bong"; the

informant had smelled marijuana in the residence over the course

of 2006, the last time being in December 2006; and the informant

had seen marijuana in sandwich baggies on three occasions in

December, 2006. The corroborating facts supplied by Det. Krause

in the affidavit, independent of the informant, included: Det.

Krause drove by the residence and the description matched the

one provided by the OSI agent; Det. Krause determined that there

had been eight loud party complaints for the residence in 2006;

3

and the OSI had obtained a urinalysis from one of the tenants which came back positive for marijuana.

In regard to the "veracity," "reliability," and the "basis of knowledge" of the informant, the only reference in the affidavit to any of these factors was Det. Krause's secondhand allegation that the OSI agent informed him that the informant was "deemed reliable." There is nothing in the affidavit which supports or explains that bare conclusory statement. There is no information specifically provided in the affidavit that would establish that this informant was telling the truth. There is nothing about the informant's background or whether he or she had provided accurate information in the past. Without more information, a mere conclusory statement that the informant is "deemed reliable" is an inadequate basis to determine probable cause.[1] See Gates, 462 U.S. at 239.

This inadequacy in the affidavit as to the veracity, reliability, and basis for the informant's knowledge was obviously recognized by the magistrate, a Washington state Superior Court judge, when he asked Det. Krause what information from the informant had been corroborated. In response to this inquiry, Det. Krause erroneously informed the judge that the positive urinalysis was conducted based on information from the

---

[1] The record reflects that the OSI agent had much of this information, but it ultimately did not find its way into the affidavit.

4

informant.  As a result of that conversation the magistrate asked Det. Krause to add language to the affidavit that the urinalysis had been conducted based on the informant's information.[2]

While the informant did allege the presence of and use of marijuana in the residence, the specific allegations of the use of a glass "bong" and sandwich baggies do not add significant support to the totality-of-the-circumstances analysis.  It is common knowledge that marijuana is kept and distributed in sandwich baggies and that "bongs" are used to ingest marijuana smoke.  These are details that relate to easily obtained facts and conditions rather than individualized allegations such as the specific date, time, circumstances, and the names of those present when marijuana was used or possessed.

It is true that where an affidavit does not reflect evidence of the veracity of an informant, that deficiency can be offset where there is sufficient independent corroborating evidence.  Quezada-Enriquez, 567 F.3d at 1233.  The additional facts alleged by Det. Krause, however, provided little

---

[2] Det. Krause added and initialed the phrase to the affidavit "Based upon the source's information +" as a preface to the allegation that "OSI obtained a urinalysis from one of the two named subjects that came back positive for the presence of marijuana."  In reviewing probable cause determinations, courts must look at the information made known to the authorizing official at the time of his decision.  United States v. Carter, 54 M.J. 414, 418 (C.A.A.F. 2001) (citing United States v. Cunningham, 11 M.J. 242, 243 (C.M.A. 1981)).

corroboration.  While he did corroborate the address that was provided to him by the OSI agent by driving by the residence, that again is easily obtained information.  The information concerning loud party complaints adds little to a totality-of-the-circumstances analysis for a search warrant for possession of marijuana.  The positive urinalysis does constitute evidence that someone then living at the residence had used marijuana sometime in the past, but its inclusion in the affidavit is diminished by a lack of explanation as to the circumstances of the test and its proximity in time to the search warrant application.

The Government argues that the information from the informant was corroborated by the results of the urinalysis and that the specific detailed information provided by the informant and corroborated by Det. Krause overcomes the lack of information concerning the reliability of the informant.  While I recognize that a determination of probable cause by a neutral and detached magistrate is entitled to substantial deference,[3] in this case we are determining whether the affidavit, after excluding the false information, would have provided a substantial basis for determining probable cause.  In this case it does not.

---

[3] Carter, 54 M.J. at 419.

6

The limited factual information presented to the magistrate, combined with the almost total lack of any information as to the informant's veracity, reliability, and basis of knowledge, is not overcome by the limited corroboration provided by Det. Krause.  This record simply does not support a "substantial basis" for determining that probable cause existed.

If a search warrant affidavit lacks probable cause, the evidence obtained as the result of the warrant may still be admissible under the "good faith" exception established in United States v. Leon, 468 U.S. 897 (1984), and recognized in Military Rule of Evidence 311(b)(3).  The "good faith" exception applies "where the official executing the warrant relied on the magistrate's probable cause determination and the technical sufficiency of the warrant, and that reliance was 'objectively reasonable.'"  Carter, 54 M.J. at 419 (citing Leon, 468 U.S. at 922).

In Leon the Supreme Court also recognized four circumstances where the "good faith" exception would not apply.[4] The first of those circumstances involve a "false or reckless affidavit."  There is no division of opinion in this case that the information added to the affidavit in response to the

---

[4] The four circumstances identified in Leon where the "good faith" exception does not apply are where there is:  (1) a false or reckless affidavit; (2) a lack of judicial review; (3) a facially deficient affidavit; and (4) a facially deficient warrant.  Carter, 54 M.J. at 419.

magistrate's request for corroboration of the informant's allegations was provided with reckless disregard for the truth.

> In United States v. Leon, the Supreme Court explained that the Fourth Amendment itself does not expressly require excluding evidence that was obtained in violation of its command.  Rather, the exclusionary rule operates as a "judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved."  468 U.S. at 906 (citation and quotation marks omitted).  Use of the exclusionary rule is to prevent further police misconduct in other cases, not to compensate the individual whose Fourth Amendment rights were violated or to punish the errors of judges and magistrates.  468 U.S. 906, 916.

Leedy, 65 M.J. at 219-20 (C.A.A.F. 2007) (Erdmann, J., concurring).

Having found that the information added to the affidavit was done so in reckless disregard for the truth, the "good faith" exception does not apply.  I would therefore reverse the decision of the United States Air Force Court of Criminal Appeals and set aside the finding of guilty to Specification 2 of the Charge.  In light of the sentence received by Cowgill and the fact that he would remain convicted of use of cocaine and possession of marijuana, I would affirm the sentence.