**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 15, 2009
Decided January 15, 2010

**Before**

TERENCE T. EVANS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 09-1832

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Indiana, Hammond Division. |
| *v.* | No. 2:08 CR 113 |
| ARTIS MARTIN, JR., *Defendant-Appellant.* | Philip P. Simon, *Judge*. |

**O R D E R**

Police officers arrested Artis Martin after a pat-down, and a search of his car revealed a concealed firearm and several small bags of marijuana. The district court denied Martin's motion to suppress the evidence uncovered during the incident, and a jury found him guilty of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and possession of marijuana, 21 U.S.C. § 844(a). On appeal, Martin challenges the denial of his motion to suppress, arguing that: (1) the officer did not have sufficient cause to stop his vehicle, and (2) the search of his car was improper because Martin was already secured in the officer's

patrol car. Because the officer had probable cause to conduct the initial traffic stop and later, during the stop, developed probable cause to search Martin's vehicle without a warrant, we affirm.

At the suppression hearing, the police officer who initially stopped Martin, Martin Chnupa, described the events leading up to the search. Chnupa, a patrolman for the Lake County Sheriff's Department, testified that on the day of the traffic stop he was on a "seatbelt grant," a special four-hour overtime shift where he primarily sought to stop motorists who were not complying with applicable seatbelt laws. This grant required him to have four contacts with motorists per hour.

During his shift, Chnupa observed in his rearview mirror that the driver of the vehicle behind him, later identified as Martin, was not wearing his seatbelt. Chnupa also believed that he saw the buckle of the seatbelt dangling from a pillar. (Photos of the defendant's car show that the seatbelt actually attaches to the rear of the driver's seat.) Because the road was under construction, Chnupa did not immediately stop Martin. Instead, he moved to the shoulder of the road and let Martin pass him. While following Martin, Chnupa saw Martin change lanes several times without signaling. After they passed the construction area, Chnupa pulled alongside Martin's vehicle and confirmed that he was not wearing his seatbelt. He did not recall other details like the color of either Martin's shirt or the unbuckled seatbelt. Chnupa then positioned his vehicle behind Martin's and turned on his emergency lights. Martin did not immediately stop; he proceeded for two to four blocks and then pulled into a parking lot, where Martin has a business.

Seconds after stopping, Martin opened the driver's side door of his vehicle and attempted to exit. Believing that Martin would either try to flee or harm him, Chnupa exited his patrol car, rushed to Martin's vehicle, and pinned him against the door. Upon pinning Martin, Chnupa smelled from the car a strong odor of burnt marijuana and saw a green leafy substance on Martin's shirt that he believed to be marijuana. While he had Martin pinned to the car, Chnupa also observed a bulge in Martin's right hip area. He patted Martin down, finding a firearm. Chnupa then handcuffed Martin and placed him in his patrol car.

Chnupa next searched Martin's car, both for inventory assessment before its impoundment and to investigate the strong odor of marijuana emanating from the vehicle. He found several small bags of what later turned out to be marijuana and two burnt marijuana cigarettes in the vehicle. Two Hammond police officers assisted at the scene and also testified that a strong odor of marijuana was emanating from the vehicle.

Louis Rizo, an acquaintance of Martin's who worked at a used car lot next to the parking lot where the stop occurred, testified on Martin's behalf. Rizo stated that, while in the car lot servicing several customers, he observed Martin pull into the adjacent lot and take off his seatbelt to reach into the glove compartment.

The district court denied Martin's suppression motion. The court credited Chnupa's testimony, concluding that he had probable cause to conduct a traffic stop because Martin was not wearing his seatbelt in violation of IND. CODE § 9-19-10-2 and, independently, because Martin changed lanes without signaling in violation of IND. CODE § 9-21-8-25. The court acknowledged that Chnupa mistakenly believed that the seatbelt attached to a pillar rather than the rear of the driver's seat, but still believed Chnupa's report that Martin was not belted. The court did not believe Rizo's testimony that he had seen, from across the lot while servicing customers, Martin wearing his seatbelt.

Martin challenges the denial of his motion to suppress for two reasons. First, he contends that Officer Chnupa's testimony failed to establish that Chnupa had sufficient cause to stop Martin's vehicle. When reviewing the denial of a motion to suppress the fruits of a warrantless search, we review legal questions de novo and factual findings for clear error. *United States v. Groves*, 530 F.3d 506, 509 (7th Cir. 2008); *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008). While courts exclude evidence obtained through unreasonable stops, *see Phelan v. Village of Lyons*, 531 F3d 484, 488 (7th Cir. 2008); *United States v. Robeles-Ortega*, 348 F.3d 679, 681 (7th Cir. 2003), police may stop a vehicle when they have probable cause to believe the driver has committed a traffic violation, *see United States v. Hernandez-Rivas*, 513 F.3d 753, 758-59 (7th Cir. 2008); *United States v. Moore*, 375 F.3d 580, 583 (7th Cir. 2004).

In support of his argument, Martin points out that Chnupa initially reported seeing Martin's seatbelt buckle dangling from a driver's side pillar, but that photos of Martin's car show that the buckle was attached to the rear of the driver's seat. Martin also points out that Chnupa could not remember the details like the color of the driver's shirt or the color of the seatbelt. Finally, Martin urges that the requirement that Chnupa have four contacts per hour increased the likelihood of an improper stop. Martin argues that all these facts together make Chnupa's testimony incredible.

The district court weighed these credibility factors, and its finding that Chnupa saw Martin unbelted was not clear error. Chnupa had two close-range opportunities to see that Martin did not have a seatbelt across his chest. Details like the belt's color or how it attached to the car were immaterial to Chnupa's two observations, if believed, that Martin was, in fact, unbelted. Furthermore Martin points to nothing that *required* the district court

to treat Chnupa's quota of four stops per hour as invalidating two otherwise credible observations. The court also permissibly found incredible Rizo's testimony that he saw, from across the lot, Martin remove his seatbelt because Rizo admitted that he was servicing customers and was not looking at the distant scene for very long.

Because the district court's factual finding that Chnupa saw Martin unbelted was not clearly erroneous, Chnupa had probable cause to stop Martin for failing to wear a seatbelt. *See Hernandez-Rivas*, 513 F.3d at 758-59. Chnupa also had independent probable cause to stop him for changing lanes without signaling. Martin disputes this independent basis for the stop on the ground that, during his trial testimony, Chnupa did not repeat this alternative basis for the stop. But the reason for the stop was not relevant to the trial, *see United States v. Cunningham*, 462 F.3d 708, 714 (7th Cir. 2006) (issue properly decided on motion to suppress moot at trial), and therefore Chnupa's omission of the point at trial does not undermine his second justification for stopping Martin's vehicle.

Martin next challenges the search of his vehicle. Citing *Arizona v. Gant*, 129 S. Ct. 1710 (U.S. 2009), Martin contends that Chnupa should not have searched his vehicle without a warrant because Martin was secured in the patrol car, so any search incident to the arrest to ensure Chnupa's safety was unnecessary. Martin also argues that since he was arrested for possession of a firearm, the search was inappropriate because it could not have contained evidence of the offense of arrest.

*Gant* is distinguishable because its ban on warrantless car searches applies to only one exception to the Fourth Amendment's warrant requirement: the search-incident-to-arrest exception. The government does not rely on that exception here. The search-incident-to-arrest exception states that police officers may search a vehicle within an arrestee's reach for their own safety without a warrant. *Gant*, 129 S. Ct. at 1723-24. While *Gant* held that this exception excuses the need for a warrant only when the arrestee actually has potential access to the vehicle, it also emphasized, as we recently observed in *United States v. Stotler*, No. 08-4258, slip op. at 8-9 (7th Cir. 2010), that the Court did not invalidate other exceptions to the warrant requirement for vehicle searches.

Chnupa was entitled to search the car because his actions fell within two exceptions to the warrant requirement for vehicle searches: probable cause of criminal activity and inventory searches. The former states that when police have probable cause to believe a vehicle contains contraband, they may search the vehicle. *See Gant*, 129 S. Ct. at 1721 (stating that the probable-cause exception remains valid); *Stotler*, No. 08-4258, slip op. at 8-9 (7th Cir. 2010) . The latter, the inventory-search exception, states that a warrantless search of a vehicle before impoundment is lawful if conducted in conformity with standard police

procedures aimed at protecting the owner's property.  *See United States v. Cherry*, 436 F.3d 769, 772-73 (7th Cir. 2006); *Pittman*, 411 F.3d at 817.

Chnupa testified that he searched Martin's vehicle, not incident to Martin's arrest, but both to inventory the vehicle before its impoundment and to investigate the strong odor of marijuana he detected coming from the car.  When Chnupa detected the odor of marijuana emanating from the vehicle, he had probable cause to search the car independent of the firearm arrest.  *See Cherry*, 436 F.3d at 772; *United States v. Wimbush*, 337 F.3d 947, 950-51 (7th Cir. 2003); *United States v. Mazzone*, 782 F.2d 757, 761 (7th Cir. 1986).  And once Martin was under arrest, the reasonable decision to impound the car gave Chnupa another independent reason to conduct a thorough inventory search.  Though the record regarding the inventory-search policy is undeveloped, Martin does not dispute that Chnupa followed protocol.

For these reasons, the judgment of the district court is

AFFIRMED.